| | |
|---|---|
| Elizabeth Norton,<br><br>*On behalf of herself and those similarly situated*,<br><br>　　　　Plaintiff,<br>　v.<br><br>Pizza Luce, Inc.; Pizza Luce II, Inc.; Pizza Luce III, Inc.; Pizza Luce IV, Inc.; Pizza Luce V, Inc.; Pizza Luce VI, Inc.; Pizza Luce VII, Inc.; Pizza Luce VIII, Inc.; Pizza Luce IX, Inc.; JJ Haywood; Laura Hansen; Joe Baier; Doe Corporation 1-10; John Doe 1-10<br><br>　　　　Defendants. | Case No. _____ |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.　　Elizabeth Norton, on behalf of herself and similarly-situated individuals, brings this action against Defendants Pizza Luce, Inc.; Pizza Luce II, Inc.; Pizza Luce III, Inc.; Pizza Luce IV, Inc.; Pizza Luce V, Inc.; Pizza Luce VI, Inc.; Pizza Luce VII, Inc.; Pizza Luce VIII, Inc.; Pizza Luce IX, Inc.; JJ Haywood; Laura Hansen; Joe Baier; Doe Corporation 1-10, and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Minnesota wage and hour laws, and for unjust enrichment.

2.　　Defendants operate 9 Pizza Luce locations (the "Defendants' Pizza Luce stores").

1

3. Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Pizza Luce stores.

4. Defendants repeatedly and willfully violated the Fair Labor Standards Act and Minnesota wage and hour laws by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5. All delivery drivers at the Defendants' Pizza Luce stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

8. Plaintiff Elizabeth Norton is a resident of Minnesota.

9. Plaintiff is an "employee" of all of the Defendants as defined in the FLSA and Minnesota wage and hour laws.

10. Plaintiff has given written consent to join this action.

**Defendants**

11. Defendants together operate the Pizza Luce stores.

12.     The Pizza Luce stores are owned and operated by the "Entity Defendants," Pizza Luce, Inc., Pizza Luce II, Inc., Pizza Luce III, Inc., Pizza Luce IV, Inc., Pizza Luce V, Inc., Pizza Luce VI, Inc., Pizza Luce VII, Inc., Pizza Luce VIII, Inc., Pizza Luce IX, Inc., and the "Individual Defendants," JJ Haywood, Laura Hansen, and Joe Baier.

13.     Defendants operate as a "single integrated enterprise" or "single employer" because they share functional interrelation of operations, common management, centralized control of labor relations, and common ownership.

14.     Because the work performed by Plaintiff and all other Delivery Drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

15.     Defendants suffer or permit Plaintiff and other delivery drivers to work.

16.     The Entity Defendants each operate individual Pizza Luce stores, but are operated together and by the same individuals. Upon information and belief, the Entity Defendants apply the same policies and procedures to all of their delivery drivers.

17.     Defendant Pizza Luce, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

18.     Defendant Pizza Luce II, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

19.     Defendant Pizza Luce III, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

20.     Defendant Pizza Luce IV, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

21.     Defendant Pizza Luce V, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

22.     Defendant Pizza Luce VI, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

23.     Defendant Pizza Luce VII, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

24.     Defendant Pizza Luce VIII, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

25.     Defendant Pizza Luce IX, Inc. is a domestic corporation, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 401 2nd Ave, N., Suite 210, Minneapolis, MN 55401.

26.     Upon information and belief, the Entity Defendants are owned and operated by JJ Haywood, Laura Hansen, and Joe Baier.

27.     The Entity Defendants were founded by Joe Baier.

28.     At all relevant times, the Entity Defendants can command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Luce stores.

29.     At all relevant times, the Entity Defendants have had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

30.     At all relevant times, upon information and belief, the Entity Defendants apply or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

31.     At all relevant times, the Entity Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

32.     At all relevant times, the Entity Defendants have maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

33.     At all relevant times, each of the Entity Defendants have been an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

34.     At all relevant times, each of the Entity Defendants have been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.     Upon information and belief, each of the Entity Defendants have separately grossed in excess of $500,000 in revenue per year.

36. Collectively, the Entity Defendants have grossed in excess of $500,000 in revenue per year.

37. JJ Haywood is an owner and officer of Defendants' Pizza Luce stores.

38. JJ Haywood is the CEO of the Pizza Luce stores and the Entity Defendants.

39. Upon information and belief, JJ Haywood is also known as Julie Haywood.

40. JJ Haywood can command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Luce stores.

41. JJ Haywood is individually liable to the Defendants' Pizza Luce stores' delivery drivers under the definitions of "employer" set forth in the FLSA and Minnesota law because she owns and operates the Defendants' Pizza Luce stores, serves as a manager of the Defendants' Pizza Luce stores, ultimately controls significant aspects of the Defendants' Pizza Luce stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.

42. At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had financial control over the operations at each of the Defendants' Pizza Luce stores.

43. At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has a role in significant aspects of the Defendants' Pizza Luce stores' day to day operations.

44. At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had control over the Defendants' Pizza Luce stores' pay policies.

45.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had power over personnel and payroll decisions at the Defendants' Pizza Luce stores, including but not limited to influence of delivery driver pay.

46.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Luce stores.

47.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Luce stores.

48.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had the power to transfer the assets and liabilities of the Defendants' Pizza Luce stores.

49.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had the power to declare bankruptcy on behalf of the Defendants' Pizza Luce stores.

50.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood as had the power to enter into contracts on behalf of each of the Defendants' Pizza Luce stores.

51.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood has had the power to close, shut down, and/or sell each of the Defendants' Pizza Luce stores.

52.     At all relevant times, by virtue of her role as an owner and CEO of Defendants' Pizza Luce stores, JJ Haywood had authority over the overall direction of each of Defendants' Pizza Luce stores and was ultimately responsible for their operations.

53.     The Defendants' Pizza Luce stores function for JJ Haywood's profit.

54.     JJ Haywood has influence over how the Defendants' Pizza Luce stores can run more profitably and efficiently.

55.     Laura Hansen is an owner and operator of Defendants' Pizza Luce stores.

56.     Laura Hansen may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Luce stores.

57.     Laura Hansen exercises control over staffing decisions, for example, what benefits to offer and what uniforms are required.

58.     Laura Hansen is individually liable to the Defendants' Pizza Luce stores' delivery drivers under the definitions of "employer" set forth in the FLSA and Minnesota law because she owns and operates the Defendants' Pizza Luce stores, serves as a manager of the Defendants' Pizza Luce stores, ultimately controls significant aspects of the Defendants' Pizza Luce stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.

59.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had financial control over the operations at each of the Defendants' Pizza Luce stores.

60.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has a role in significant aspects of the Defendants' Pizza Luce stores' day to day operations.

61.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had control over the Defendants' Pizza Luce stores' pay policies.

62.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had power over personnel and payroll decisions at the Defendants' Pizza Luce stores, including but not limited to influence of delivery driver pay.

63.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Luce stores.

64.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Luce stores.

65.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had the power to transfer the assets and liabilities of the Defendants' Pizza Luce stores.

66.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had the power to declare bankruptcy on behalf of the Defendants' Pizza Luce stores.

67.     At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen as had the power to enter into contracts on behalf of each of the Defendants' Pizza Luce stores.

68. At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen has had the power to close, shut down, and/or sell each of the Defendants' Pizza Luce stores.

69. At all relevant times, by virtue of her role as an owner and operator of Defendants' Pizza Luce stores, Laura Hansen had authority over the overall direction of each of Defendants' Pizza Luce stores and was ultimately responsible for their operations.

70. The Defendants' Pizza Luce stores function for Laura Hansen's profit.

71. Laura Hansen has influence over how the Defendants' Pizza Luce stores can run more profitably and efficiently.

72. Joe Baier is the founder and owner of Defendants' Pizza Luce stores.

73. During some or all of the relevant time period, Joe Baier has operated the Defendants' Pizza Luce stores.

74. During some or all of the relevant time period, Joe Baier has had the authority to command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Luce stores.

75. During some or all of the relevant time period, Joe Baier has been individually liable to the Defendants' Pizza Luce stores' delivery drivers under the definitions of "employer" set forth in the FLSA and Minnesota law because he owns and operates the Defendants' Pizza Luce stores, serves as a manager of the Defendants' Pizza Luce stores, ultimately controls significant aspects of the Defendants' Pizza Luce stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

76.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had financial control over the operations at each of the Defendants' Pizza Luce stores.

77.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has a role in significant aspects of the Defendants' Pizza Luce stores' day to day operations.

78.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had control over the Defendants' Pizza Luce stores' pay policies.

79.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had power over personnel and payroll decisions at the Defendants' Pizza Luce stores, including but not limited to influence of delivery driver pay.

80.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Luce stores.

81.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Luce stores.

82.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had the power to transfer the assets and liabilities of the Defendants' Pizza Luce stores.

83.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had the power to declare bankruptcy on behalf of the Defendants' Pizza Luce stores.

84.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier as had the power to enter into contracts on behalf of each of the Defendants' Pizza Luce stores.

85.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier has had the power to close, shut down, and/or sell each of the Defendants' Pizza Luce stores.

86.     During some or all of the relevant time period, by virtue of his role as founder and owner of Defendants' Pizza Luce stores, Joe Baier had authority over the overall direction of each of Defendants' Pizza Luce stores and was ultimately responsible for their operations.

87.     During some or all of the relevant time period, the Defendants' Pizza Luce stores have functioned for Joe Baier's profit.

88.     During some or all of the relevant time period, Joe Baier has had influence over how the Defendants' Pizza Luce stores can run more profitably and efficiently.

89.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Luce stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Luce stores as that term is defined by the FLSA and Minnesota wage and hour laws. ("Doe Corporation 1-10").

90.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Luce stores as that term is defined by the FLSA and Minnesota wage and hour laws. ("John Doe 1-10").

91.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

## Class-wide Factual Allegations

92.     During all relevant times, Defendants have operated the Defendants' Pizza Luce stores.

93.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Pizza Luce stores.

94.     During the relevant time period, all delivery drivers employed at the Defendants' Pizza Luce stores have had essentially the same job duties.

95.     The delivery drivers at the Defendants' Pizza Luce stores worked dual jobs, one where they complete deliveries and received tips, and another when they help inside the store and did not receive tips.

96.     The delivery drivers' non-tipped job duties are not related to and are not completed simultaneously with their tipped job duties. For example, when there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Luce stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

97.     Plaintiff asserts the claims herein on behalf of herself and similarly situated employees relating to the hours they worked on the road making deliveries.

98. Plaintiff and similarly situated delivery drivers have been paid a wage rate of minimum wage or slightly above minimum wage for the hours they worked delivering for Defendants' Pizza Luce stores.

99. Defendants require delivery drivers at Defendants' Pizza Luce stores to provide cars to use while completing deliveries for Defendants.

100. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

101. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, and storage costs.

102. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and pay to safely and securely store their vehicles all for the primary benefit of Defendants.

103. Plaintiff and similarly situated delivery drivers received a per-delivery reimbursement payment that resulted in them receiving less than the IRS standard business mileage rate for each mile they drove.

104. Defendants' reimbursement payments are not based on the actual expenses incurred by the delivery drivers.

105. The Defendants' Pizza Luce stores do not track or record the delivery drivers' actual expenses.

106.    The Defendants' Pizza Luce stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

107.    The Defendants' Pizza Luce stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

108.    The Defendants' Pizza Luce stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

109.    The Defendants' Pizza Luce stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

110.    The Defendants' Pizza Luce stores do not collect receipts of delivery drivers' automobile registration costs.

111.    The Defendants' Pizza Luce stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

112.    The Defendants' Pizza Luce stores do not collect receipts of delivery drivers' automobile storage costs.

113.    The Defendants' Pizza Luce stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Pizza Luce stores.

114.    The Defendants' Pizza Luce stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

115.    The Defendants' Pizza Luce stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

116. The Defendants' Pizza Luce stores do not reasonably approximate the delivery drivers' expenses.

117. The Defendants' Pizza Luce stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

118. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2017: 53.5 cents/mil
    b.    2018: 54.5 cents/mile
    c.    2019: 58 cents/mile
    d.    2020: 57.5 cents/mile
    e.    2021: 56 cents/mile
    f.    January to June 2022: 58.5 cents/mile
    g.    July to December 2022: 62.5 cents/mile
    h.    2023: 65.5 cents/mile

119. The delivery drivers at the Defendants' Pizza Luce stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, the increased wear and tear, accelerated depreciation, and insurance costs associated with using a car for pizza delivery.

120. Defendants require the delivery drivers to download and use a smartphone application to track and manage all of their deliveries. As a result, the delivery drivers incurred cell phone related expenses for the benefit of Defendants.

121. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Minnesota law.

122. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Luce stores.

123.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

124.     Defendants have willfully failed to pay federal and Minnesota state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Luce stores, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

125.     The delivery drivers at the Defendants' Pizza Luce stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

126.     Defendants reimburse their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

127.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

128.     Defendants benefit because they do not have to employ additional individuals or expend additional time managing, monitoring, and maintaining a fleet of vehicles.

129.     Defendants benefit from the delivery drivers at the Defendants' Pizza Luce stores spending time off the clock repairing and maintaining their vehicles.

130.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to store a fleet of vehicles to complete their deliveries.

131.     Defendants benefit from delivery drivers at the Defendants' Pizza Luce stores taking on the risk of using their vehicles to drive for Defendants' business.

132.     Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

133.    Defendants benefit from not having to store the delivery drivers' vehicles when they are not in use for business purposes.

134.    Defendants are more easily able to secure loans or financing because the delivery drivers take on the substantial costs associated with providing cars needed to operate their business.

135.    Defendants need less up-front capital because the delivery drivers provide cars to make Defendants' deliveries.

**Plaintiff's Individual Factual Allegations**

136.    Plaintiff worked at the Pizza Luce located at 210 Blake Rd. N., Hopkins, Minnesota 55343 from approximately 2019 until 2023.

137.    Plaintiff works dual jobs: one job where Plaintiff is on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

138.    Plaintiff's non-tipped job duties were not related to her tipped job duties.

139.    Plaintiff's non-tipped job duties were not completed contemporaneously with her tipped job duties.

140.    Plaintiff was paid Minnesota minimum wage for all hours worked.

141.    When Plaintiff was not delivering food, she works inside the restaurant. Her work inside the restaurant includes doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

142.    Plaintiff is required to use her own car to deliver pizzas.

143. Plaintiff was reimbursed a per-delivery amount, $1.05 per delivery, for each order she delivered for Defendants.

144. Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

145. Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

146. Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, stored her vehicle, and incurred cell phone and data charges all for the primary benefit of Defendants.

147. Defendants do not track the actual expenses incurred by Plaintiff.

148. Defendants do not ask Plaintiff to provide receipts of the expenses she incurs while delivering pizzas for Defendants.

149. Defendants do not reimburse Plaintiff based on her actual delivery-related expenses.

150. Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

151. Defendants do not reimburse Plaintiff based on a reasonable approximation of her expenses.

152. Plaintiff regularly makes approximately 3 deliveries per hour during the hours she works on the road making deliveries.

153. Plaintiff regularly drove approximately 4-5 miles per round trip delivery.

154. In 2020, for example, the IRS business mileage reimbursement was $.575 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 4.5 miles per delivery, Defendants reimbursed Plaintiff $.233 per mile ($1.05 per delivery / 4.5 miles per delivery). As a result, in 2020, Plaintiff estimates that Defendants under-reimbursed her by $.342 per mile ($.575-$.233=$.342), $1.539 per delivery ($.342 × 4.5 miles per delivery), and $4.617 per hour ($1.539 × 3 deliveries per hour).

155. Defendants failed to pay Plaintiff a minimum wage as required by law.

### Collective Action Allegations

156. Plaintiff brings the First Count on behalf of herself and

All similarly situated current and former delivery drivers employed at the Defendants' Pizza Luce stores during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

157. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

158. Defendants' unlawful conduct is pursuant to a company policy or practice.

159. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

160. Defendants' unlawful conduct has been widespread, repeated, and consistent.

161.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

162.    The FLSA Collective members are readily identifiable and ascertainable.

163.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

164.    Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Luce stores in the State of Minnesota between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Minnesota Wage Class").

165.    Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Luce stores in the State of Minnesota between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Minnesota Unjust Enrichment Class") (Combined with Minnesota Wage Class "Rule 23 Classes")

166.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

167.   The number and identity of the Minnesota Wage Class members are ascertainable from Defendants' records.

168.   The number and identity of the Minnesota Unjust Enrichment Class members are ascertainable from Defendants' records.

169.   The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

170.   All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

171.   For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

172.   Notice can be provided by means permissible under Rule 23.

173.   The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

174.   There are more than 50 Minnesota Wage Class members.

175.   There are more than 50 Minnesota Unjust Enrichment Class members.

176.   Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

177.   Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

178.     Plaintiff and the Minnesota Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Minnesota wage law.

179.     Plaintiff and the Minnesota Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

180.     Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

181.     Plaintiff is able to fairly and adequately protect the interests of the Minnesota Wage Class and has no interests antagonistic to the Minnesota Wage Class.

182.     Plaintiff is able to fairly and adequately protect the interests of the Minnesota Unjust Enrichment Class and has no interests antagonistic to the Minnesota Unjust Enrichment Class.

183.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

184.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

185.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

186.     The Minnesota Wage Class and the Minnesota Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

187.     Common questions of law and fact exist as to the Minnesota Wage Class that predominate over any questions only affecting Plaintiff and the Minnesota Wage Class members individually and include, but are not limited to:

    a.   Whether Plaintiff and the Minnesota Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    b.   Whether Plaintiff and the Minnesota Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    c.   Whether Defendants reimbursed Plaintiff and the Minnesota Wage Class members for their actual expenses;

    d.   Whether Defendants reimbursed Plaintiff and the Minnesota Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    e.   Whether Defendants properly reimbursed Plaintiff and the Minnesota Wage Class members;

    f.   Whether Plaintiff and the Minnesota Wage Class members were subject to a common expense reimbursement policy;

    g.   Whether Plaintiff and the Minnesota Wage Class were actually paid the wage rate they were promised by Defendants;

    h.   Whether Defendants improperly deducted or withheld wages from Plaintiff and the Minnesota Wage Class;

    i.   Whether Defendants timely paid Plaintiff and the Minnesota Wage Class the wages earned by them;

    j.   The nature and extent of class-wide injury and the measure of damages for those injuries

188.     Common questions of law and fact exist as to the Minnesota Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Minnesota Unjust Enrichment Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Minnesota Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b.  Whether Plaintiff and the Minnesota Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c.  Whether Plaintiff and the Minnesota Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Plaintiff and the Minnesota Unjust Enrichment Class conferred a measurable benefit on Defendants;

e.  Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Minnesota Unjust Enrichment Class providing cars to use to make deliveries;

f.  How much it would have cost Defendants to operate their business but for Plaintiff and the Minnesota Unjust Enrichment Class providing cars to use to make deliveries;

g.  Whether Defendants benefited from Plaintiff and the Minnesota Unjust Enrichment Class providing vehicles and thereby covering substantial business expenses for Defendants;

h.  Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Minnesota Unjust Enrichment Class;

i.  The nature and extent of class-wide injury and the measure of damages for those injuries.

189.     In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum and Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

190.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

191.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

192.     Defendants paid Plaintiff and the FLSA Collective at or close to the Minnesota minimum wage for all hours worked.

193.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

194.     As a result of Defendants' vehicle and vehicle expense reimbursement policy, Plaintiff and the FLSA Collective kicked back a portion of their wages to Defendants, resulting in Plaintiff and the FLSA Collective receiving effective wages less than minimum wage and, in weeks where they worked more than 40 hours, less than time and a half their regular rate.

195.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

196.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

197.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Minn. Stat. 177.21 *et seq.***
**(On Behalf of Plaintiff and the Minnesota Wage Class)**

198. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

199. Defendants are a "large employer" as that term is defined in the Minnesota Fair Labor Standards Act.

200. Defendants paid Plaintiff and the Minnesota Wage Class below state minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

201. Defendants ostensibly paid Plaintiff and the Minnesota Wage Class at or close to minimum wage for the hours they worked.

202. Because Defendants required Plaintiff and the Minnesota Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Minnesota Wage Class minimum wage.

203. By not paying Plaintiff and the Minnesota Wage Class at least minimum wage for each hour worked, Defendants have violated Minn. Stat. § 177.21 et seq.

204. As a result of Defendants' violations, Plaintiff and the Minnesota Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

**Count 3**
**Unlawful Deduction From Wages – Minn. Stat. § 177.21, *et seq*.**
**(On Behalf of Plaintiff and the Minnesota Wage Class)**

205.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

206.     Defendants did not fully reimburse Plaintiff and the Minnesota Wage Class for the expenses they incurred in operating their motor vehicles for Defendants' business purposes.

207.     As a result of Defendants' failure to reimburse delivery drivers for the expenses they incurred in operating their motor vehicles for Defendants' business purposes, Plaintiff and the Minnesota Wage Class were each subject to a deduction for equipment used in employment that exceeded $50 in violation of Minn. Stat. § 177.24, Subd. 4.

208.     As a result of requiring Plaintiff and the Minnesota Wage Class to pay in excess of $50 toward vehicle expenses that benefited the company, Defendants made unlawful direct or indirect deductions that resulted in Plaintiff and the Minnesota Wage Class's wages falling below the minimum wage.

209.     Alternatively, if Plaintiff and the Minnesota Wage Class's vehicle expenses are considered "travel expenses," Defendants have improperly deducted said expenses from Plaintiff and the Minnesota Wage Class's wages in violation of Minn. Stat. § 177.24, Subd. 4.

210.      As a result of Defendants' violations, Plaintiff and the Minnesota Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

**Count 4**
**Untimely Payment of Wages – Minn. Stat. § 181.101 *et seq.***
**(On Behalf of Plaintiff and the Minnesota Wage Class)**

211.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

212.     During all relevant times, Defendants were covered by Minn. Stat. § 181.101, were within the meaning of "employer" as defined by Minn. Stat. § 181.171 and were not exempt from its protections.

213.     Minn. Stat. § 181.101(1) requires that Defendants pay Plaintiff and the Minnesota Wage Class all wages earned by the employee at least once every 31 days and on a regular payday designated in advance.

214.     By failing to pay Plaintiff and the Minnesota Wage Class all wages due to them under the FLSA and Minnesota wage and hour law, Defendants have also violated Minn. Stat. § 181.101.

215.     Plaintiff and the Minnesota Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty-one (31) days beyond their regularly scheduled payday.

216.     As a result of Defendants' violations, Plaintiff and the Minnesota Wage Class are entitled to unpaid wages, attorney's fees, and costs.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Minnesota Unjust Enrichment Class)**

217.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

218.     The Minnesota Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

219.     Defendants are aware of and have accepted the benefit conferred on them by the Minnesota Unjust Enrichment Class.

220.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Minnesota Unjust Enrichment Class without commensurate compensation.

221.     Plaintiff and the Minnesota Unjust Enrichment Class are entitled to equitable restitution of the benefits conferred on Defendants.

**WHEREFORE**, Plaintiff Elizabeth Norton prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.     Unpaid minimum and overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.     Designation of Plaintiff as representative of the Minnesota Wage Class and the Minnesota Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.      An award of unpaid minimum wages, unreimbursed expense, unlawful deductions, and untimely paid wages due under Minn. Stat. § 177.21 *et seq*. and Minn. Stat. § 181.101 *et seq*.

F.      An award of restitution as a result of unjust enrichment to the Minnesota Unjust Enrichment Class.

G.      An award of pre-judgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Respectfully submitted,

s/ Corey W. Kobbervig
Corey W. Kobbervig (#0395472)
Kobbervig Law LLC
1624 Harmon Pl Ste 300G
Minneapolis, MN 55403
Telephone: (651) 357-0111
*corey@kobberviglaw.com*

www.KobbervigLaw.com

Andrew P. Kimble *(pro hac vice application forthcoming)*
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*akimble@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*